PER CURIAM.
Joan Marie Headley appeals her conviction and sentence for scheme to defraud, aggravated white collar crime, grand theft, and money laundering. On appeal, she contends that her double jeopardy rights have been violated as she was convicted of aggravated white collar crime as well as eight other offenses which are predicate offenses for aggravated white collar crime.[1] Drawing from cases interpreting the Racketeer Influenced and Corrupt Or *913 ganizations Act (RICO) and continuing criminal enterprise, we find that a defendant can be convicted of section 775.0844, Florida Statutes (2005), aggravated white collar crime, as well as the predicate offenses, without violating double jeopardy. Accordingly, we affirm Headley’s conviction and sentence.

The Case and Conviction

Headley and her co-defendant, Phillip Davis, were involved in the theft of grant money that was meant to fund the Miami-Dade Resident College (MDRC). Each was subsequently charged with one count of scheme to defraud $50,000 or more; one count of aggravated white collar crime, a violation of section 775.0844, Florida Statutes (2005);[2] two counts of grand theft of more than $20,000 but less than $100,000; one count of grand theft of more than $300 but less than $5,000; and twenty-five counts of money laundering of more than $300 but less than $20,000. The aggravated white collar crime charges were based upon predicate acts consisting of scheming to defraud, grand theft, uttering a forged instrument, and money laundering.
The evidence presented at trial showed that MDRC received three grants from the Miami-Dade Housing Agency for payroll and operating expenses. The grant contracts stated MDRC was to be reimbursed for expenses already incurred. The contracts set forth MDRC employment positions, and these contracts were signed by Davis as the executive director of MDRC and Headley as the administrative assistant.
The employees that were paid under the grants signed contracts with a company called Workforce Management, not with MDRC. The president of Workforce testified that he set up the company at Davis’ request, Davis’ post office box was used as Workforce’s mailing address for bank correspondence, and Davis provided the name “Workforce Management” and paid its incorporation fee.
*914 Workforce submitted invoices to the grant administrator in order to receive reimbursement for payroll that MDRC claimed Workforce had already paid. Miami-Dade Housing Agency paid MDRC $100,557.18 to compensate nineteen employees, but only $86,845.78 was in fact paid. The evidence and testimony showed that invoices listed hours not worked by employees resulting in overpayment to MDRC; listed amounts paid to employees, which were greater than what the employees received; listed hourly rates greater than those paid to employees; and listed employees no one had heard of.
MDRC also had a reimbursement grant from the State of Florida/ Department of Juvenile Justice. The grant was to fund two positions up to $50,000. Marie Boswell, the grant administrator, paid out $19,000. Davis wanted to increase the hourly rate of the employees in order to get the full $50,000 allowed by the grant. He told Boswell that he had a contract with Workforce, he owed Workforce $50,000, and Workforce might sue him.
Records also reflected that employees (including Headley), who were reported as having been paid under the Miami-Dade Housing Agency grant, were documented as also having been paid for the same hours under the State grant.
The jury found Headley guilty of one count of scheme to defraud $50,000 or more, one count of aggravated white collar crime, two counts of grand theft of more than $20,000 but less than $100,000, and five counts of money laundering. The trial court entered convictions on all counts but only entered a sentence on the aggravated white collar crime count, suspending sentence on all other counts. The court sentenced Headley to ten years state prison followed by ten years probation.
Analysis — Double Jeopardy
Headley contends that she cannot be convicted and sentenced for both aggravated white collar crime and the predicate offenses.[3] The State argues that aggravated white collar crime is similar to the continuing criminal enterprise (CCE) statute analyzed in Garrett v. United States, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), and as with CCE, section 775.0844 was enacted by the legislature to enhance punishment. The State contends that, applying the Garrett analysis, the white collar crime statute establishes a separate offense that allows for prosecution of the predicate offenses as well as for aggravated white collar crime.
The Double Jeopardy Clause prohibits multiple convictions and punishments for the same offense. U.S. Const, amend. V; Art. I, § 9, Fla. Const. Without a clear statement to show legislative intent to authorize separate punishments for multiple offenses arising from the same criminal transaction, courts generally apply the “same elements” test. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); see also Cruller v. State, 808 So.2d 201, 203 n. 3 (Fla.2002) (“[Cjourts only employ the Blockburger test if there is no clear statement of legislative intent to authorize separate punishments for the two crimes in question.”). In Florida, this test is codified as part of section 775.021, Florida Statutes (2005).
The White Collar Crime Victim Protection Act and the Florida RICO Act are similarly constructed, and both were enacted to allow for prosecution of the major offense as well as the predicate offenses. Both statutes establish an offense in which it is implicit that the defendant has committed a number of predicate offenses. Compare § 775.0844(3)-(4), with *915 § 895.02. It has been previously held by Florida courts that being convicted of RICO as well as the necessarily lesser included offenses does not violate double jeopardy. See, e.g., Gross v. State, 728 So.2d 1206, 1208 (Fla. 4th DCA 1999); Haggerty v. State, 531 So.2d 364, 365 (Fla. 1st DCA 1988). The legislative intent in adopting the white collar crime statute was to “enhance sanctions imputed for nonviolent frauds and swindles, protect the public’s property, and assist in prosecuting white collar criminals.” § 775.0844(2). As with RICO, the white collar crime statute was geared toward prosecuting those individuals who engage in a pattern of committing felony offenses involving fraud and deceit. See § 775.0844(4) (defining “aggravated white collar crime”); see also Carroll v. State, 459 So.2d 368, 370 (Fla. 5th DCA 1984) (recognizing that by establishing RICO, the legislature intended to punish those who engage in a pattern of criminal activity more severely than those who only commit the predicate offenses).
Additionally, analyzing the white collar crime statute’s language and structure, as in Garrett, Headley’s double jeopardy rights were not violated as a result of being convicted of aggravated white collar crime and the predicate offenses. Garrett, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (recognizing that the legislature intended CCE to be a separate offense and to permit prosecution for predicate offenses as well as CCE, and concluding that convictions for both does not violate double jeopardy). As with CCE, the legislative intent in establishing section 775.0844 was to create a separate and distinct offense, see State v. Traylor, 77 So.3d 224, 226 (Fla. 5th DCA 2011) (recognizing that charging a defendant with aggravated white collar crime is a “distinct” new count, separate from any predicate offenses previously charged); there is no reference in the statute to a multiplier of a penalty for some other offense; the punishment set forth in the statute does not reference its predicate offenses; and the definition of aggravated white collar crime is not drafted in the way that a recidivist provision would be drafted. See Garrett, 471 U.S. at 778, 781-82, 105 S.Ct. 2407.

Conclusion

Accordingly, we hold that the trial court did not err in convicting Headley of the offense of aggravated white collar crime and the underlying predicate offenses, and we affirm the circuit court conviction and sentence.

. Headley raised three other arguments as well. We have carefully considered these points but find them to be without merit.

.Section 775.0844 provides:
(3) As used in this section, "white collar crime” means:
(a)The commission of, or a conspiracy to commit, any felony offense specified in:
1. Chapter 560, relating to the Money Transmitters' Code.
2. Chapter 812, relating to theft, robbery, and related crimes.
3. Chapter 815, relating to computer-related crimes.
4. Chapter 817, relating to fraudulent practices.
5. Chapter 825, relating to abuse, neglect, and exploitation of elderly persons and disabled adults.
6. Chapter 831, relating to forgery and counterfeiting.
7. Chapter 832, relating to the issuance of worthless checks and drafts.
8. Chapter 838, relating to bribery and misuse of public office.
9. Chapter 839, relating to offenses by public officers and employees.
10. Chapter 895, relating to offenses concerning racketeering and illegal debts.
11.Chapter 896, relating to offenses related to financial transactions.
(b) A felony offense that is committed with intent to defraud or that involves a conspiracy to defraud.
(c) A felony offense that is committed with intent to temporarily or permanently deprive a person of his or her property or that involves a conspiracy to temporarily or permanently deprive a person of his or her property.
(d) A felony offense that involves or results in the commission of fraud or deceit upon a person or that involves a conspiracy to commit fraud or deceit upon a person.
(4) As used in this section, "aggravated white collar crime” means' engaging in at least two white collar crimes that have the same or similar intents, results, accomplices, victims, or methods of commission, or that are otherwise interrelated by distinguishing characteristics and are not isolated incidents, provided that at least one of such crimes occurred after the effective date of this act.

. While the trial court suspended sentence as to the predicate offenses, Headley is correct in asserting that this does not cure the potential double jeopardy violation. See Butler v. State, 760 So.2d 151 (Fla. 3d DCA 1999).