UNITED STATES of America

v.

Eugene ROMERO, a/k/a "Mike Mellon," a/k/a "Eugene Prince," a/k/a "Fred," Stephanie Romero, Sharece Walker, Ronald Carter, "Ronald McKissick," a/k/a "Justice," and Randall Cannon, a/k/a "Randy," Defendants.

No. 91 Cr. 586 (RPP).

United States District Court, S.D. New York.

March 10, 1992.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City by Deborah Landis, Asst. U.S. Atty., for U.S.

Lawrence A. Vogelman, Cardozo Criminal Law Clinic, New York City, for defendant Eugene Romero.

Irving Cohen, New York City, for defendant Stephanie Romero.

Grossman, Lavine & Rinaldo, Forest Hills, N.Y. by Charles Lavine, for defendant Randall Cannon.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

In a four-count indictment filed July 11, 1991 and superseded in January 1992, the grand jury has charged Defendant Eugene Romero with (1) conspiracy to violate the narcotics laws of the United States from late 1979 to the filing of the superseding indictment in violation of 21 U.S.C. § 846; (2) conspiracy to prevent one Warren Tyson from communicating information to federal law enforcement officers about federal narcotics offenses from January 1988 through March 26, 1988 in violation of 18 U.S.C. § 371; (3) inducing the murder of Warren Tyson to prevent his communication with federal law enforcement officers in violation of 18 U.S.C. § 1512(a); and (4) engaging in a continuing criminal enterprise

("CCE") as an organizer, supervisor, and manager by continuing violations of the narcotics laws from 1979 to the filing of the indictment in violation of 21 U.S.C. § 848(a). Joined in Count One are Defendants Stephanie Romero, Sharece Walker, Ronald Carter, and Randall Cannon, along with eleven unindicted co-conspirators.

Defendant Eugene Romero moves to dismiss Counts One and Four of the indictment on the grounds of double jeopardy in violation of his rights under the Fifth Amendment of the United States Constitution. He also argues that the Government is estopped from prosecution of Counts One and Four by virtue of plea agreements made during August 18–20, 1987. Pursuant to those plea agreements, Mr. Romero pleaded guilty before Judge Barrington D. Parker in the United States District Court for the District of Columbia to Count Eight of an indictment filed in the District of Columbia which charged him with possession with intent to distribute over 100 grams of heroin and to Count Two of an indictment filed in the Southern District of New York which charged him in Counts One, Two, and Four with, respectively, participation in a racketeering enterprise, a racketeering conspiracy, and a conspiracy to violate the narcotics laws, violations of 18 U.S.C. §§ 2, 1961, 1962(c), (d) and 21 U.S.C. § 846.

Defendants Randall Cannon and Stephanie Romero each seek a severance from their Co-defendants, asserting that they are alleged to have played only minor roles in the conspiracy charged and will be prejudiced if they are tried together with Eugene Romero and the other Defendants, against whom the Government intends to adduce evidence of acts not participated in by Randall Cannon and Stephanie Romero, including evidence of homicides allegedly carried out to eliminate actual and potential threats to the existence and success of the conspiracy.

Argument was held on January 21, 1992 on Eugene Romero's motion to dismiss and on January 31, 1992 on Randall Cannon's motion to sever. Thereafter counsel for Stephanie Romero waived oral argument on her motion to sever. For the reasons set forth below, Defendant Eugene Romero's motion to dismiss Count Four is denied. His motion to dismiss Count One is also denied, in view of the second superseding indictment filed by the Government on February 26, 1992,[1] which eliminated all suggestions that Eugene Romero is charged in Count One as a Defendant for acts occurring prior to August 20, 1987. The motions for severance of Defendants Randall Cannon and Stephanie Romero are denied.

## BACKGROUND

1. The 1987 Southern District of New York and District of Columbia Indictments

Count One of the 1987 Southern District of New York indictment charged that Mr. Romero was a participant in an enterprise led by James Jackson called the "Jackson organization," which distributed narcotics, principally heroin, in Manhattan (specifically at 117th Street and 8th Avenue in Harlem), the Bronx (specifically in the Patterson Projects), Bridgeport, Connecticut (specifically in the Father Panik Village housing projects), Washington, D.C., and Boston. The Jackson organization was alleged to have engaged in racketeering activity from January 1, 1980 to the date of the filing of the 1987 indictment. According to that indictment, the heroin was distributed under the brand names "Red Apple," "Purple Rain," and "New York JJ" and sold in "quarters" for approximately fifty dollars or less per quarter. The indictment also alleged that the Jackson organization distributed cocaine obtained principally from unindicted co-conspirator Gregory Berry and committed murder and other acts of violence to eliminate actual and potential competition and obstacles to the enterprise.

Besides Mr. Jackson and Mr. Romero, the 1987 indictment charged Leonard Rol-

---

1. A copy of the proposed indictment was furnished to all parties and the Court on February 20, 1992.

lack, Timothy Smith, and Matthew Walton, named as unindicted co-conspirators in Count One of the present indictment, as defendant participants in the Jackson organization. Unindicted co-conspirators named in the 1987 indictment were Anthony Osborne, Anthony MacKenzie, Jerome Harris, Joseph Rodney Stokes, Joseph Sherman, Ted H. Key, Marco Wyche, Alfred Dicks, Warren Cooper, Sherman Flowers, Margie Gates, Anthony Johnson, Russell Fleming, Cherie Brown, Joseph Bethea, and homicide victims James Simmons and Jerry Davis, none of whom are named in the present indictment. Among the racketeering acts charged in Count One of the 1987 indictment were the murders of Marion Robinson, Norman Bannister, and James Simmons, the kidnapping and attempted murder of Jerry Davis, and the attempted murder of Gary Rhines. Defendant Eugene Romero was one of the defendants charged with the murder of Norman Bannister in Act of Racketeering Two.

Count Two of the 1987 indictment charged Mr. Romero with racketeering conspiracy with the same persons and by virtue of the same racketeering acts charged in Count One of that indictment. In Count Four of the 1987 indictment, Mr. Romero and the Count One defendants were charged with conspiracy to violate the narcotics laws from January 1, 1980 to the filing of the indictment in violation of 21 U.S.C. § 846. Although the 1987 and 1991 indictments include overlapping time periods and some of the same co-conspirators, none of the racketeering acts alleged in the 1987 RICO indictment are included as overt acts in Count One of the July 11, 1991 indictment or the superseding indictment.[2]

The 1987 District of Columbia indictment charged Mr. Romero in Count Eight with possession with intent to distribute in excess of 100 grams of heroin on April 21, 1987 in violation of 21 U.S.C. § 841(a),

(b)(1)(B)(i), which possession by Mr. Romero together with possession of a gun is included as Overt Act (q) of the indictment pending here. Mr. Romero was charged in Count One of the 1987 District of Columbia indictment with conspiracy to violate the narcotics laws from April 20–21, 1987 to the date of filing the indictment in violation of 21 U.S.C. § 846.

## 2. The 1987 Plea Agreement

In a proceeding that commenced on August 18, 1987 and concluded on August 20, 1987, Mr. Romero pleaded guilty before Judge Parker in the District of Columbia to Count Two, the racketeering conspiracy, of the 1987 Southern District of New York indictment. At that time, the Government's proffer of proof to be adduced at trial was that, although the racketeering conspiracy continued to 1987, Eugene Romero's involvement consisted of his participation with other co-racketeers in the distribution of heroin between 1980 and 1981 on 116th Street and Eighth Avenue and within the Hotels Rivella and Shelton in Manhattan, which heroin Mr. Romero obtained from a variety store in the vicinity of 159th Street and Amsterdam Avenue owned by Steven Ash. Gov.Aff. in Opp. Exh. B at 20–22.

Mr. Romero allocuted before Judge Parker to distributing heroin from these locations four times during a period of sixty to ninety days in 1981. He admitted he had received the heroin from Steven Ash, an alleged co-racketeer. Mr. Romero claimed he distributed heroin alone and denied any illicit activity with James Jackson or anyone else other than Steven Ash. *Id.* at 24, 28–31. Based on this allocution, Mr. Romero entered a guilty plea to Count Two of the 1987 Southern District of New York indictment. He also pleaded guilty to Count Eight of the 1987 District of Columbia indictment and acknowledged the pos-

---

**2.** Overt Act (n) in Count One of the 1991 indictment does allege that during the period 1985 through 1986 Defendant Ronald Carter assisted in selling the brand of heroin "Red Apple," one of the three brands allegedly distributed in the 1987 indictment. Overt Act (gg) of the 1991 indictment also alleges that on December 12,

1990, co-conspirator Justine Roberts possessed, among other narcotics paraphernalia, a Red Apple stamp. Thus, the present indictment apparently charges a conspiracy to possess and distribute one of the brands of heroin allegedly distributed by those charged in the 1987 indictment.

session of heroin charged in that count. The Government agreed that the remaining counts in both indictments would be dismissed at time of sentencing.

On October 6, 1987, the Government by letter to Judge Parker disclosed that, subsequent to Mr. Romero's plea of guilty to Count Two of the Southern District of New York indictment, it learned that Mr. Romero had been involved in more extensive narcotics trafficking than charged and in over one-half dozen homicides committed to eliminate witnesses and narcotics competitors. Based on this new information, the Government moved to vacate the plea agreement. On October 29, 1987, Judge Parker held an evidentiary hearing to address whether the plea agreement should be set aside. During the hearing, Judge Parker heard testimony by Detective Gilbert Hight and Mr. Romero's then attorney David Breitbart. The Government asked that the plea agreement be vacated due to the new evidence received on August 24, 1987 and thereafter. Mr. Breitbart claimed that the Government had already possessed such information at the time of the plea agreement. Detective Hight did testify that on August 13, 1987 he "knew that Mr. Romero was the leader of this particular enterprise for a period of time ... [f]rom the middle of 1980 through the beginning of 1985, a total of about three years" and that "Mr. Romero was the source of supply for this particular organization." Gov.Aff. in Opp.Exh. D at 56–57. But Detective Hight also testified that he and Assistant U.S. Attorney Galeno first learned of Mr. Romero's involvement in additional narcotics trafficking and homicides on or after August 24, 1987. *Id.* at 58–59.

On December 22, 1987, Judge Parker denied the Government's motion to vacate the plea agreement and sentenced Mr. Romero to fifteen years in prison on the District of Columbia indictment and fifteen years on the Southern District of New York indictment, each term to be served concurrently. Judge Parker expressed the view that the

new evidence against Mr. Romero could be prosecuted separately. The remaining charges were dismissed on motion of the Government.[3]

### 3. The 1991 Southern District of New York Indictment

In Count One of the instant indictment Defendants Eugene Romero, his wife Stephanie Romero, Sharece Walker, Ronald Carter, and Randall Cannon are alleged to have engaged in a conspiracy from late 1979 to the filing of the indictment, with unindicted co-conspirators James Jackson, Timothy Smith, Raymond Clark, Mark Reiter, Leonard Rollack, Matthew Walton, Joseph Pratt, Deitrich McCoy, Warren Tyson, Justine Roberts, Frank Costanz, and others known and unknown to violate the narcotics laws of the United States. The thirty-five overt acts alleged include several homicides allegedly committed to eliminate actual and potential threats to the existence and success of the conspiracy. None of these homicides are the same as those alleged in the 1987 Southern District of New York indictment.

At oral argument the Court raised the question whether the Government was charging multiple conspiracies in Count One of the 1991 indictment in view of the withdrawal of Jackson by virtue of his cooperation with the Government on and after August 24, 1987 and Defendant Romero's plea of guilty to the RICO conspiracy on August 20, 1987. *Cf. United States v. Kotteakos,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The Government took the position that the conspiracy to distribute heroin was a continuing one, which Defendant Romero may never have left or may have rejoined subsequent to his guilty plea. Transcript of Jan. 21, 1992 Oral Argument (Jan. 21, 1992 Tr.) at 27–28, 34–35, 59. An ongoing conspiracy to distribute heroin may be inferred from the allegations charging that Defendants Eugene Romero and Ronald Carter, together with co-con-

---

**3.** On April 22, 1988, Romero filed a motion to reduce his sentence, which, apparently by oversight, the Government failed to oppose. Accordingly, on October 7, 1988, Judge Parker granted the motion and reduced the sentence to six years. On October 21, 1988 the Government filed a motion to reinstate the original sentence, which Judge Parker denied.

spirator Joseph Pratt, committed overt acts in furtherance of the conspiracy both prior to Eugene Romero's guilty plea in 1987 and after that date. Furthermore, Warren Tyson is named as an unindicted co-conspirator in pre-August 20, 1987 acts and is alleged in Overt Acts (s) and (t) to have been killed in furtherance of the conspiracy in 1988.

These allegations and the allegations in both the 1987 and 1991 Southern District of New York indictments showing that the Red Apple brand of heroin was distributed indicate that, rather than a series of lesser conspiracies to sell heroin, what is being charged in Count One is a single, long-standing conspiracy in which a large number of Mr. Romero's associates distributed heroin, including the Red Apple brand, and which Mr. Romero rejoined or never left. Nevertheless, pursuant to *Kotteakos,* care must be taken that at trial the Government's proof is not of separate conspiracies but is limited to evidence of a single, continuing conspiracy as charged.

Count Four of the instant indictment charges Defendant Eugene Romero with engaging in a continuing criminal enterprise from late 1979 to the filing of the indictment, committing a continuing series of violations of the narcotics laws with at least five other persons with respect to whom Mr. Romero occupied the position of organizer, supervisor, and manager. The continuing series of violations is alleged to include the narcotics violation set forth in Count One of the indictment.

## DISCUSSION

### 1. Estoppel

 Defendant Romero argues that the Government is estopped from charging him on Counts One and Four because its 1987 plea agreement with Mr. Romero covered any charges the Government could bring against him based on the information it possessed at that time. Def.Mem. in Supp. at 12 (claiming that plea covered " 'any possible charges' pending against [Eugene Romero] in the Southern District of New York"). The transcript of the hearing before Judge Parker provides no basis for the Court to conclude that the Government had sufficient evidence linking Mr. Romero to the homicides charged in the present indictment to have charged him with those acts at the time of the plea. Although Assistant U.S. Attorney Maria Galeno may have referred to Eugene Romero as a "murdering drug dealer" as Mr. Breitbart asserted, Gov.Aff. in Opp.Exh. D at 18, 68–71, Mr. Romero was charged in the 1987 Southern District of New York indictment with the murder of Norman Bannister as one of the racketeering acts committed by the Jackson organization. Thus, even if Ms. Galeno made such a statement, she was not necessarily referring to the homicides charged in the instant indictment.

Furthermore, knowledge gained from informants' reporting about a defendant's activities is distinct from the Government's possession of evidence with which to charge a defendant. *Cf. United States v. Scarpa,* 913 F.2d 993, 1014 (2d Cir.1990) ("As a general matter, a prosecutor is 'justified in not seeking the indictment until ... convinced that there [will] be sufficient evidence to prove guilt beyond a reasonable doubt.' " (quoting *United States v. Rubin,* 609 F.2d 51, 66 (2d Cir.1979), *aff'd,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981))). Any statement by Ms. Galeno to Mr. Breitbart that the plea agreement "cleans up everything I now have" clearly would have referred to her possession of evidence sufficient to indict and nothing broader, such as hearsay information about a defendant. Mr. Breitbart himself recalled Ms. Galeno stating prior to August 20, 1987 that the agreement "certainly [does] not [clean up] what an investigation two years from now turns up." Gov.Aff. in Opp.Exh. D at 76. Further, Mr. Breitbart told Judge Parker on August 18, 1987 that the plea would "clean up all *pending* obligations." *Id.* Exh. A at 83 (emphasis added). Accordingly, although the Government is estopped from proving any crimes for which Mr. Romero was indicted in 1987 and that were dismissed pursuant to the plea agreements, the Government is not estopped from proving, by reason of the Government's prior conduct including Ms. Galeno's alleged

statements, crimes by Mr. Romero of which, as the Government has consistently asserted, it did not have evidence until after August 20, 1987.

## 2. Double Jeopardy

The Supreme Court's 1990 decision in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), "significantly altered the jurisprudential landscape of double jeopardy," *United States v. Gambino*, 920 F.2d 1108, 1112 (2d Cir.1990), creating a new "same conduct" test that asks whether the Government used previously prosecuted conduct "to establish an essential element" of the offense charged in the subsequent prosecution. *Grady*, 110 S.Ct. at 2087. In *Grady*, the Supreme Court held that a prosecution for vehicular homicide following misdemeanor convictions for driving while intoxicated and failing to keep right of the median was barred on grounds of double jeopardy, because the bill of particulars in the homicide case showed that the prosecution would rely on the same conduct for which the defendant already had been convicted. *See id.* at 2094.

As discussed below, Count One of the instant indictment is not barred under *Grady*, particularly in light of the second superseding indictment filed February 26, 1992 which, together with the jury instructions the Government has agreed to,[4] will make clear to the jury that Mr. Romero is only being charged with rejoining the conspiracy after August 20, 1987. Under the Second Circuit opinions dealing with the impact of *Grady* on subsequent racketeering conspiracy and continuing criminal enterprise prosecutions, Count Four, the CCE charge, is also not barred under the Fifth Amendment by the 1987 prosecutions.

### a. Count One: Narcotics Conspiracy

■ The *Grady* Court stated in a footnote to the opening substantive discussion that "an exception [to the traditional double jeopardy analysis] may exist where the

State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence." *Id.* at 2090 n. 7. Although in noting this exception the *Grady* Court, quoting *Brown v. Ohio*, 432 U.S. 161, 169 & n. 7, 97 S.Ct. 2221, 2227 & n. 7, 53 L.Ed.2d 187 (1977), referred to the " 'more serious charge' " subsequently prosecuted, the analysis is the same whether the subsequent charge is "more serious" or not. *See id.* at 168–69, 97 S.Ct. at 2226–27; *Ashe v. Swenson*, 397 U.S. 436, 453 n. 7, 90 S.Ct. 1189, 1199 n. 7, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring). Further, as the *Grady* opinion makes clear, the "same conduct" test it sets forth is neither a "same evidence" nor a "same transaction" test. 110 S.Ct. at 2093 & n. 12, 2094 & n. 15. Thus, even "[t]he presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding." *Id.* at 2093. Similarly, *Grady* states that a subsequent prosecution based upon the same transaction is not barred if the Government would not rely on proving the defendant's conduct for which the defendant was already convicted. *Id.* at 2094 & n. 15.

At oral argument Mr. Vogelman, counsel for Mr. Romero, argued that "conduct" is a broader concept than "overt acts" and that "even though the government was careful to craft different overt acts, they are still charging the same conduct" in the present indictment. Jan. 21, 1992 Tr. at 14–15. The Government, emphasizing the inclusion in the instant indictment of eighteen overt acts that occurred after Mr. Romero's plea, asserts that "the instant indictment charges conduct that ... could not have been covered by the previous prosecution." Gov.Mem. in Opp. at 16. The Government has agreed to "limit Romero's liability for participation in the narcotics conspiracy to conduct that occurred after he pleaded guilty" in August 1987. *Id.* Its second

**4.** At oral argument, the Government suggested that the Court instruct the jury: "You may not find the defendant [Eugene Romero] guilty of

the conspiracy charged in Count One based upon his conduct prior to [August 20,] 1987." Jan. 21, 1992 Tr. at 33.

superseding indictment clarifies that intention.

*Grady*'s reference to previously prosecuted "conduct" is not easily transferred to the context of successive conspiracy prosecutions. *Cf. Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), ("classically simple situation presented in" single transaction case cannot be readily transposed to "multilayered conduct, both as to time and to place involved" in CCE case). Accordingly, an examination of the differences and overlap in conduct charged must be undertaken. Count One of the 1991 indictment charges a narcotics conspiracy that extends beyond the time period charged in the 1987 Southern District of New York indictment and contains none of the overt acts charged in that indictment. As found above, the Government did not have the evidence prior to Mr. Romero's plea in 1987 to charge him with the pre-August 20, 1987 homicides and additional narcotics trafficking activities charged in sixteen of the seventeen pre-August 20, 1987 overt acts in the present indictment.

The time periods and co-conspirators in the 1987 and 1991 Southern District of New York indictments overlap, however. Counts Two and Four of the 1987 indictments, which charged Mr. Romero with conspiracy to violate the racketeering laws and conspiracy to violate the narcotics laws, were based on the narcotics trafficking of the co-conspirators between January 1980 and the filing of the indictment in 1987. Count One of the 1991 indictment charges narcotics trafficking by Mr. Romero and his co-conspirators from late 1979 to the filing of the indictment. The persons charged in Counts Two and Four of the 1987 indictment included James Jackson, Leonard Rollack, Matthew Walton, and Timothy Smith, who are named as unindicted co-conspirators in the instant indictment. Additionally, the Government acknowledges that Overt Act (q) in the instant indictment is the act of possession by Mr. Romero on April 21, 1987 of 500 grams of heroin that formed the basis of Count Eight of the District of Columbia indictment, to which Mr. Romero pleaded guilty on August 18–20, 1987. Jan. 21, 1992 Tr. at 41.

■ Allowing proof of Overt Act (q) would violate *Grady* if that proof were used to establish an essential element of the narcotics conspiracy charged in Count One of the instant indictment as against Mr. Romero. Since a jury can convict for conspiracy on finding proof beyond a reasonable doubt of a single overt act, the Court will have Overt Act (q) redacted so that the jury will be unable to rely on it for a finding that the government has proved that an overt act was committed in furtherance of the objectives of the alleged conspiracy. *Cf. United States v. Russo,* 906 F.2d 77, 78 (2d Cir.1990).

The overlap in time and persons charged in the 1991 indictment with the time and persons charged in the 1987 Southern District of New York indictment implicates the principle stated in *United States v. Calderone,* 917 F.2d 717 (2d Cir.1990). In *Calderone,* the Second Circuit held that double jeopardy applied because "[u]nder *Grady,* ... conduct may not be prosecuted a second time in order to establish an 'agreement' that differs from the first crime only in that the indictment happens to describe it differently." *Id.* at 721. Nevertheless, the footnote to the opening substantive discussion in *Grady* acknowledges an exception to its ruling and permits a subsequent prosecution that requires evidence the Government had not previously possessed either because the facts had not yet occurred or because the evidence had not yet been discovered despite the exercise of due diligence. *See Grady,* 110 S.Ct. at 2090 n. 7 (citing *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)).

The new evidence discovered by the Government on and after August 24, 1987 concerning Mr. Romero's involvement in additional narcotics trafficking and homicides prior to August 20, 1987 falls within this exception, as does the evidence concerning his acts and those of his co-conspirators after August 20, 1987. Thus, the crucial distinction between the instant case and *Calderone* is that the present indict-

ment charges a conspiracy that extends in time beyond the period charged in the 1987 indictment, and charges pre-August 20, 1987 conduct of which the Government had insufficient evidence to indict prior to that date.[5] No double jeopardy violation under *Grady* occurs if Mr. Romero is named only as an unindicted co-conspirator for acts prior to August 20, 1987, as in the second superseding indictment, and if the overt acts naming him are allowed against him only to prove the existence and nature of the conspiracy and not to prove that he joined the conspiracy or committed an overt act in furtherance of it.

It should be noted, as discussed below, that much of the new evidence relating to the prior charges to which Mr. Romero pleaded guilty in August 1987, which evidence Mr. Romero seeks to have excluded by dismissal of Count One, is admissible against Mr. Romero for purposes of proving Count Four, the CCE charge. *See Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); *Gambino*, 920 F.2d at 1112. The Government asserts that the Court's preclusion of such evidence would prevent the Government from presenting its charges in Count One as to other Defendants who are alleged to have engaged in actions in furtherance of the conspiracy prior to August 1987, and from establishing the existence of the conspiracy and its membership and background, since Mr. Romero "is the central figure" in the alleged conspiracy and "the whole conspiracy doesn't make sense without him." Jan. 21, 1992 Tr. at 25. Thus, it would be harmful to the prosecution to preclude such evidence, and yet not unduly prejudicial to Mr. Romero to admit it as proof of the existence of the conspiracy charged in Count One, provided the Court reminds the jury on appropriate occasions that it can only find Mr. Romero guilty on Count One if it finds that he joined the conspiracy after August 20, 1987 and that an overt act in furtherance of the conspiracy was committed after that date. Accordingly, the Court rejects Mr. Romero's

request for preclusion, redaction, or removal of any and all overt acts occurring prior to August 20, 1987 in which Mr. Romero is named, with the exception of Overt Act (q). *See Gambino*, 920 F.2d at 1112; Jan. 21, 1992 Tr. at 12, 18.

■ To protect Mr. Romero from prejudicial spillover resulting from evidence of his alleged involvement in pre-August 20, 1987 overt acts, the Court will instruct the jury on appropriate occasions as requested by his counsel during trial that such pre-plea acts by Mr. Romero shall not be considered as evidence that Mr. Romero had joined the conspiracy charged. The Court will also utilize a special verdict form with instructions requiring that, to convict Eugene Romero on Count One, the jury find that the Government proved both that Mr. Romero rejoined the conspiracy subsequent to August 20, 1987 and that an overt act in furtherance of the objectives of the alleged conspiracy occurred after that date. To assist the jury in this parsing of the evidence, the Court will require that when the jury is presented with the indictment at the time of deliberation, the overt acts alleged in Count One be divided into pre-August 20, 1987 and post-August 20, 1987 categories, with explicit directions that only the latter overt acts be considered against Mr. Romero. Overt Act (q) will be redacted.

■ Defendant Romero, citing both *United States v. Calderone* and *United States v. Russo*, argues that *Grady* "serves to bar a second prosecution for a predicate act that was previously the basis for a RICO prosecution" and thus bars Count One in this case. Def. Mem. in Supp. at 7–9. In *Calderone*, the Second Circuit found that a prior prosecution for a large-scale conspiracy barred a subsequent prosecution for a smaller conspiracy alleging the same heroin-selling activities that, along with other activities, were alleged in the first prosecution. *See* 917 F.2d at 718. In *Russo*, the Second Circuit found that a subsequent prosecution for a predicate act

---

5. As discussed *infra,* in the context of subsequent CCE and RICO prosecutions the Second Circuit has consistently found that *Grady* does

not bar such prosecutions where the CCE or RICO conspiracy extends beyond the period previously charged.

that had been alleged in a prior RICO prosecution was barred under *Grady. See* 906 F.2d at 78.

Neither *Calderone* nor *Russo* are applicable to the situation here. In the instant case, the subsequent indictment alleges a series of eighteen significant acts extending beyond the time that Mr. Romero pleaded guilty to the prior prosecutions. None of Mr. Romero's authorities address the constitutionality of a subsequent prosecution of a defendant for conspiracy based upon proof of acts that occurred after the defendant's plea in a prior RICO prosecution of a similar nature. Mr. Romero's argument in essence is that his plea to the RICO indictment grants him immunity from prosecution for any subsequent acts taken to further and continue the criminal conspiracy or enterprise in which he was involved. " 'If the law supposes that,' said Mr. Bumble ..., 'the law is an ass—an idiot.' " Charles Dickens, *Oliver Twist* ch. 51.

### b. *Count Four: Continuing Criminal Enterprise*

■ In *Garrett v. United States,* the Supreme Court held that the Double Jeopardy Clause did not bar the use of evidence of previously prosecuted conduct to prove a predicate act in a subsequent prosecution which included a CCE count, where the conduct being prosecuted in the CCE count was both broader than that prosecuted in the initial action and had continued for some months after the end of the prior offense. 471 U.S. at 788–89, 793, 105 S.Ct. at 2416, 2418; *see also United States v. Persico,* 774 F.2d 30, 32 (2d Cir.1985) (applying *Garrett* in RICO context). Post–*Grady* Second Circuit case law has consistently found that *Grady* did not overrule *Garrett* with respect to subsequent RICO and CCE charges that allege previously prosecuted conduct as predicate acts, at least when the RICO or CCE activity extends beyond the time of the prior conduct. *See United States v. Coonan,* 938 F.2d 1553, 1563 (2d Cir.1991); *Gambino,* 920 F.2d at 1112; *Scarpa,* 913 F.2d at 1013 n. 8. In the instant case, Eugene Romero is alleged to have engaged in a CCE up to the filing of the indictment, almost four years after his prior pleas. Thus, the continuing criminal enterprise charge is not barred by the Double Jeopardy Clause, and the Government may allege as predicate acts in Count Four actions which formed the basis of the charges covered by the 1987 plea agreement.

### 3. Severance

■ Whether to grant a motion for severance is left to the broad discretion of the district court. Judicial economy is an important factor to be considered. *E.g., United States v. Lanza,* 790 F.2d 1015, 1019 (2d Cir.), *cert. denied,* 479 U.S. 861, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986). The court should also consider the likelihood of jury confusion in separating out the evidence. *United States v. Nersesian,* 824 F.2d 1294, 1303 (2d Cir.), *cert. denied,* 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987). Before severance may be granted, a defendant must meet the "heavy burden" of showing facts demonstrating that he or she would be so prejudiced by the joinder that denial of a fair trial would result. *E.g., United States v. Burke,* 700 F.2d 70, 83 (2d Cir.1983), *cert. denied,* 464 U.S. 816 (1984); *see also Nersesian,* 824 F.2d at 1303 (to show abuse of discretion in denial of severance, defendant must establish that "miscarriage of justice" occurred). To ensure that each individual defendant receives a fair trial where many defendants are tried at once under a single conspiracy theory, it is important that the court give the jury special cautionary instructions. *Nersesian,* 824 F.2d at 1303.

■ Defendant Cannon is listed in three out of thirty-five overt acts alleged in Count One, the narcotics conspiracy, of the superseding indictment. Mr. Cannon claims that his alleged role in the conspiracy was limited, and the allegations in Count One support this contention facially. Overt Acts (u), (v), and (w), in which Mr. Cannon is named, concern his attendance at two meetings and a phone call he allegedly made to unindicted co-conspirator Frank Costanz, evidently a supplier of heroin to

members of the alleged conspiracy according to Overt Acts (x), (z), (aa), (cc), (dd), (ee), (ff), and (hh). Defendant Cannon argues that it is "inherently unfair to join Randall Cannon ... in such a violent and broad ranging charge of conspiracy," because "gross prejudice" would result from the spillover effect of the evidence of numerous homicides and narcotics activity charged in the other overt acts. Lavine Aff. ¶¶ 4, 8.

Defendant Stephanie Romero makes essentially the same arguments concerning prejudice. Stephanie Romero is listed in four of the thirty-five overt acts alleged in Count One of the superseding indictment. In Overt Acts (r), (u), (w), and (y), Ms. Romero is alleged to have been present at several meetings and to have received money from unindicted co-conspirator Joseph Pratt. She also claims the added prejudice of being Eugene Romero's wife.

The Government argues that Mr. Cannon and Ms. Romero did not play minor roles in the conspiracy. It also points out that the allegations of each Defendant's role in the indictment are compartmentalized and therefore the likelihood of prejudicial spillover small. The Government stresses that the jury would learn that Eugene Romero is Stephanie Romero's husband even if Ms. Romero were tried separately.

Defendant Cannon cites *United States v. Kelly*, 349 F.2d 720, 759 (2d Cir.1965), *cert. denied*, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966), in which the court held that the gradual accumulation of evidence against the principal members of a conspiracy to violate the securities laws required a separate trial for a minor participant who joined the conspiracy at a later stage. Mr. Cannon also relies on *United States v. Gilbert*, 504 F.Supp. 565 (S.D.N.Y.1980), in which he asserts that the court granted a severance under circumstances "less compelling" than those here. In *Gilbert*, however, the court found that the defendant was "not readily distinguishable [from his codefendant], in character or the nature of

his involvement" in a securities conspiracy. *Id.* at 571. Therefore the court found that the risk of evidentiary spillover was great. *Id.*

If Randall Cannon and Stephanie Romero are tried separately, the Government is certain to introduce virtually the same evidence of the conspiracy in which these Defendants are alleged to have taken part. The jury would hear in great detail about Eugene Romero's drug trafficking activities and the rationale for the homicides alleged to have been undertaken in furtherance of these activities. Taking into account the concerns of judicial economy, the adducing of this proof at separate trials would require "enormous duplication" in the presentation of evidence. For example, the prosecution would be required at both trials to play recordings of telephone conversations between Eugene and Stephanie Romero made while Eugene Romero was confined at Lewisburg. Gov. Mem. in Opp. at 36–37; *cf. Richardson v. Marsh*, 481 U.S. 200, 209–10, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987) (it would impair efficiency and fairness to require separate trials for conspiracy for members of large narcotics organizations in light of inconvenience and trauma of requiring witnesses to repeat testimony and advantage of "last-tried defendants" in knowing prosecution's case beforehand). The fact that Randall Cannon and Stephanie Romero are named in only a few overt acts, ones in which their role is arguably limited, reduces the likelihood that the jury will find it difficult to compartmentalize the evidence that relates to Mr. Cannon and Ms. Romero.

Upon weighing all of these concerns, the Court concludes that Defendants Randall Cannon and Stephanie Romero have not shown a sufficiently high level of prejudice to warrant the inefficiency of separate trials, nor have they demonstrated that separate trials would significantly lessen any prejudice that will occur as a result of evidence the Government will introduce to place the conspiracy in its context.

## CONCLUSION

For the foregoing reasons, Defendants' motions are denied.

IT IS SO ORDERED.