**UNITED STATES of America, Plaintiff,**

v.

**David James QUIGLEY and Michael Kelly Holdridge, Defendants.**

**File No. 1:91:CR:146.**

United States District Court,
W.D. Michigan.

June 14, 1992.

Donald Daniels, Asst. U.S. Atty., and John A. Smietanka, U.S. Atty., Grand Rapids, Mich., for plaintiff.

Robert F. Mirque, Mirque, Seys & Zoet, Grand Rapids, Mich., for defendant Holdridge.

Timothy I. Miner, Grand Rapids, Mich., for defendant Quigley.

## OPINION

ENSLEN, District Judge.

Defendants, David James Quigley and Michael Holdridge, have filed renewed motions for judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. Defendants seek the dismissal of their convictions on Count Five of the indictment (using and carrying a destructive device during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)) on the grounds that sentencing on Count Five will result in multiple punishment for the same offense without explicit congressional authorization for such punishment, thereby violating the Double Jeopardy Clause.

## BACKGROUND

Defendants were charged in a ten count indictment.[1] Count One charged defendants with conspiracy to make, possess, and detonate unregistered destructive devices (pipe bombs) in violation of 18 U.S.C. § 371. Counts Two, Six and Eight charged defendants with the making of a firearm without obtaining approval and identifying themselves and the firearm via a written application, as required by 26 U.S.C. § 5822. Counts Three, Seven, Nine and Ten charged defendants with possession of an unregistered destructive device in violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2.

Count Four of the indictment, which is the subject of defendants' Rule 29 motions, charged defendants with maliciously damaging and destroying, by means of an explosive device, a vehicle used in activity affecting interstate commerce, in violation of 18 U.S.C. § 844(i). Specifically, Count Four alleged that defendants placed and detonated a pipe bomb under a 1977 Ford station wagon that was used by a business to transport mail to and from the United States Post Office. Title 18 United States Code section 844(i) provides in pertinent part as follows:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both.

Count Five of the indictment, which is also at issue here, charged defendants with the use of a destructive device during and in relation to the crime charged in Count Four. The government alleged that this is a violation of 18 U.S.C. § 924(c)(1), which provides in pertinent part as follows:

> Whoever, during and in relation to any crime of violence ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provide for such crime of violence ... be sentenced to imprisonment for five years, ... and if the firearm is ... a destructive device ... to imprisonment for thirty years.... nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence ... in which the firearm was used or carried.

As is evident from the respective statutes, section 844(i), as applied to Count Four, allows for a maximum sentence of 10 years; section 924(c) requires a minimum of 30 years incarceration without the possibility of parole, to run consecutively to the sentence that would be imposed under section 844(i).

Defendants were convicted by a jury of all counts charged against them. Prior to trial, and at the close of evidence, defendants moved to dismiss Count Five of the indictment by arguing that enhancing the sentence imposed for a violation of section 844(i) by resort to section 924(c) is unfair or unconstitutional. Specifically, defendants argued that this amounts to multiple punishments for the same offense in violation of the fifth amendment guarantee against double jeopardy. I denied defendants motions, but granted them leave to renew their arguments by filing post-judgment motions. *See* Opinion and Order of the Court, dated April 9, 1992, and Transcript of Bench Opinion, dated April 17, 1992.

## DISCUSSION

██ The Double Jeopardy Clause protects a defendant from "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Such protection often is invoked when a defendant is punished for the same conduct under two different statutory provisions. In such a case, "the first step in the double jeopardy analysis is to determine whether the legislature ... intended that each viola-

---

1. Only defendant Quigley was indicted in Counts Eight and Nine of the indictment, whereas Holdridge, but not Quigley, was indicted in Count Ten.

**454**

tion be a separate offense." *Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985), *reh. denied,* 473 U.S. 927, 106 S.Ct. 20, 87 L.Ed.2d 698 (1985). The analysis begins here because, as I have noted in my previous opinions on this matter, if the legislature, as expressed in the language of the statute or its legislative history, clearly intended cumulative punishment under two different statutory provisions, then the imposition of multiple punishment does not violate the Double Jeopardy Clause and the Court's inquiry is at an end. *Missouri v. Hunter,* 459 U.S. 359, 368–369, 103 S.Ct. 673, 679–680, 74 L.Ed.2d 535 (1983). This is because, when dealing with multiple punishment protection, as opposed to multiple prosecution protection, " 'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.' " *Grady v. Corbin,* 495 U.S. 508, 516–17, 110 S.Ct. 2084, 2091, 109 L.Ed.2d 548 (1990) (quoting *Missouri,* 459 U.S. at 366, 103 S.Ct. at 678).

█ If the legislative intent is unclear, however, the rule from *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), must be applied. *Hunter,* 459 U.S. at 368, 103 S.Ct. at 679. Then, "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182.

In my prior rulings on defendants' double jeopardy challenge, I determined that I need not apply the *Blockburger* test because I believed that Congress had expressly authorized multiple punishments under section 924(c). However, I noted that the cases that I relied on did not involve the same underlying offense that I am confronted with in this case.

For example, where the underlying offense was a drug trafficking crime, the Seventh Circuit, in *United States v. Pow-*

*ell,* 894 F.2d 895, 900–901 (7th Cir.), *cert. denied,* 495 U.S. 939, 110 S.Ct. 2189, 109 L.Ed.2d 517 (1990), held that since "Congress intended to authorize cumulative punishment" for the underlying offense and the use of a firearm in its commission under 18 U.S.C. § 924(c), the fact of being charged with and convicted of both the underlying offense and the section 924(c) violation in separate counts "does not violate double jeopardy." Similarly, the Tenth Circuit found that Congress clearly intended the bank robbery statute, 18 U.S.C. § 2113, as one of the federal crimes of violence to which section 924 applies. *United States v. Lanzi,* 933 F.2d 824 (10th Cir.1991).

The Ninth Circuit has declared that:

When Congress amended section 924(c) in 1984, it expressly intended to authorize an additional, cumulative, sentence for persons who also violate section 2113. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 312–13 (1984), *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3490–91; *see also [United States v.] Blocker,* 802 F.2d [1102] at 1105 [ (9th Cir.1986) ]; *[United States v.] Gonzalez,* 800 F.2d [895] at 898 [ (9th Cir.1986) ].

*United States v. Browne,* 829 F.2d 760, 767 (9th Cir.1987), *cert. denied,* 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988). *See also United States v. Springfield,* 829 F.2d 860, 865 (9th Cir.1987). Similarly, in *United States v. Shavers,* 820 F.2d 1375, 1377–1378 (4th Cir.1987), *aff'd after remand,* 842 F.2d 1293 (4th Cir.1988), the court stated:

... Congress amended § 924(c) to expressly provide that it applied to felonious crimes of violence including those which imposed enhanced punishment if committed by the use of a deadly weapon. The amendment makes the punishment imposed by § 924(c) for use of a dangerous weapon additional to the punishment imposed for the crime of violence committed by the use of a deadly weapon. In short, in the context of Shavers' case, Congress intended the imposition of cumulative punishment for violation of armed bank robbery, § 2113(d),

and use of a dangerous weapon, § 924(c).... Cumulative punishments prescribed by Congress are constitutional. *See Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1984). The district court did not err by imposing consecutive sentences for violation of § 2113(d) and § 924(c).

A number of other Circuit Courts of Appeal have similarly rejected the double jeopardy argument against sentencing under section 924 when applied in connection with crimes of violence. *See United States v. Harris*, 832 F.2d 88, 91 (7th Cir.1987); *United States v. York*, 830 F.2d 885 (8th Cir.1987), *cert. denied*, 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988); and *United States v. Springfield*, 829 F.2d at 865.

Despite the foregoing authority, none of the cases treat the same underlying offense that I now encounter in this case, i.e., destroying by means of an explosive device a vehicle used in activity affecting interstate commerce, in violation of 18 U.S.C. § 844(i). Rather, the cases cited herein held that Congress intended to authorize cumulative punishment under section 924(c) where the underlying offense was a drug trafficking crime or armed bank robbery. Therefore, I directed the parties to research the legislative history of section 924(c) and brief this Court on the question whether Congress clearly intended cumulative punishment with respect to *all* crimes of violence, and, more specifically, whether Congress intended that violations of section 844(i) and 924(c) would be treated as separate offenses, thereby allowing for cumulative punishment under section 924(c).

 The parties have been unable to provide the Court with any case law specifically treating this issue. However, the parties have addressed the legislative history of section 924(c), and, upon further consideration, I believe that both the language of the statute and its legislative history express Congress' intent to authorize multiple punishment under section 924(c) for any

federal crime of violence involving a dangerous weapon.

The legislative history for the 1984 amendment to 18 U.S.C. § 924(c) is contained in Senate Report No. 98–225 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3490–91, which states in pertinent part as follows:

> The Committee has concluded that subsection 924(c) should be completely revised to ensure that *all persons who commit Federal crimes of violence*, including those crimes set forth in statutes which already provide for enhanced sentences for their commission with a dangerous weapon, receive a mandatory sentence, without the possibility of the sentence being made to run concurrently with that for the underlying offense or for any other crime and without the possibility of a probationary sentence or parole.

*Id.*, U.S.Code Cong. & Admin.News at 3491 (footnote omitted) (emphasis added).

Although the legislative history specifically refers to certain crimes that section 924(c) shall apply to, *see id.* at 3491 n. 8, and although section 844(i) is not included among those crimes or otherwise specifically discussed in the legislative history, the Senate Report does declare that the amended section 924(c) "provides for a mandatory, determinate sentence for a person who uses or carries a firearm during and in relation to *any Federal 'crime of violence'....*" *Id.* at 3491 (emphasis added). The term "crime of violence" "includes any offenses in which the use of physical force is an element and any felony which carries a substantial risk of force." *Id.* at 3491 n. 9. "Thus, the section expands the scope of predicate offenses, as compared with current law, by including some violent misdemeanors, but restricts it by excluding nonviolent felonies." *Id.*

These statements in the Senate Report persuade me that the legislature intended cumulative punishment under section 924(c) for *any* crime of violence committed with a firearm.[2] This comports with the plain lan-

---

**2.** The pipe bombs involved in the instant case fall within the statutory scope of the term "fire-

arm." The definitional provisions of the statute state that the term "firearm" means, *inter alia*,

guage of the statute itself, which provides in pertinent part as follows:

> Whoever, during and in relation to *any* crime of violence ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, *in addition to the punishment provided for such crime of violence* ... be sentence to imprisonment for five years, ... and if the firearm is ... a destructive device ... to imprisonment for thirty years.... *Notwithstanding any other provision of law,* the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, *nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence* ... in which the firearm was used or carried.

18 U.S.C. § 924(c)(1) (emphasis added).

The fact that Congress chose not to enumerate all of the predicate felonies to which section 924(c) applies, does not obscure its intent. In addition, it does not matter that "Congress could have achieved the same result by amending each statute that punishes a crime of violence when a dangerous weapon is used to provide for an increased penalty. Its amendment of § 924(c), instead of all the predicate felony statutes, does not violate the double jeopardy clause." *Shavers,* 820 F.2d at 1377–1378.

Defendants primary argument in their latest and respective Rule 29 motions is that sections 844(i) and 924(c) were never intended by Congress to be used together, as 924(c) was part of the Gun Control Act of 1968, whereas 844(i) was part of the Organized Crime Control Act of 1970. Citing the legislative history of section 924(c), defendants contend that Congress was solely concerned with the use of guns in 1968, and therefore did not contemplate the use of the Gun Control Act in conjunction

with explosives, which were not addressed by Congress until 1970.

In 1970, subsection 844(i) was enacted, along with section 844(h), which provides in part that whoever "uses an explosive to commit any felony which may be prosecuted in a court of the United States ... shall be sentenced to a term of imprisonment for not less than one year nor more than ten years." Subsection (h) is analogous to section 924(c), argue defendants, and is the more appropriate statute under which to charge defendants for use of an explosive while committing a felony. Subsection 844(h) contains its own enhancement provisions, and subsection 844(i) addresses the more specific situation involving the destruction of property affecting interstate commerce. To apply section 924(c) as a means of enhancing the section 844(i) offense, argue defendants, is to apply an enhancement to a statute that already contains enhancement provisions.

Defendants argument has some appeal, as the House Report to the Organized Crime Control Act of 1970 states that "[s]ection 844(h) carries over to the explosives area the stringent provisions of the Gun Control Act of 1968 relating to the use of firearms and the unlawful carrying of firearms to commit, or during the commission of a Federal felony." House Report No. 91–1549 (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 4007, 4046. This statement indicates that Congress intended to treat the two types of weapons under separate statutory provisions and did not intend the Gun Control Act to provide the penalties for the use of explosives. However, this argument loses its force when viewed in light of the fact that Congress specifically expanded section 924(c) in 1984 to include destructive devices, including explosives and other bombs, notwithstanding the fact that section 844(h) already existed.

█ Moreover, the fact that an alternative statute exists for prosecuting a particular offense does not preclude prosecution

---

"any destructive device," 18 U.S.C. § 921(a)(3)(D), and that the term "destructive device" means, *inter alia,* "any explosive, incen-

diary, or poison gas bomb ... or device similar...." 18 U.S.C. § 921(a)(4)(A)(i), (vi).

under a more general offense, as the decision is generally a matter of prosecutorial discretion. *United States v. Oldfield*, 859 F.2d 392, 398 (6th Cir.1988). As for defendants' argument that section 844 contains its own enhancement provisions, the legislative history to section 924(c), which I have already quoted above, states that the section should apply to "all persons who commit Federal crimes of violence, *including* those crimes set forth in statutes which already provide for enhanced sentences." 1984 U.S.Code Cong. & Admin.News at 3491.

Accordingly, it is the opinion of this Court that Congress clearly intended cumulative punishment with respect to *all* crimes of violence involving dangerous weapons, and therefore intended that violations of section 844(i) and 924(c) would be treated as separate offenses, thereby allowing for cumulative punishment in the instant case under section 924(c).

That this Court is bound by the intent of Congress does not diminish the fact that I am shocked at the result of Congress' actions. As noted earlier, section 844(i), as applied to Count Four, provides that the defendants "shall be imprisoned for not more than ten years" for destroying a vehicle used in interstate commerce by means of an explosive. 18 U.S.C. § 844(i). Yet, Congress also mandates that where defendants are convicted of violating section 924(c)—a violation that requires no further proof in this case once section 844(i) is proven—that I must impose an additional 30 year term of incarceration without the possibility of parole, to run consecutively to the sentence that will be imposed under section 844(i). Pursuant to the United States Sentencing Commission guidelines, the sentence on all counts of the indictment for David Quigley, not including Count Five which charges the section 924(c) offense, will be 41 to 51 months. This includes punishment for destroying a vehicle used in interstate commerce by means of an explosive device, as charged in Count Four. Pursuant to section 924(c) and the indictment in this case, however, Congress requires that defendants receive another 30 years for the very same conduct: using an explosive device to destroy the vehicle charged in Count Four.

The Court is troubled and dismayed not only by the pyramiding of penalties for the same offense, but also with the mandatory nature of section 924(c). I am troubled because I do not perceive the two defendants in this case as identical individuals, yet Congress has not allowed any discretion to treat them differently. While some may feel that congressional constraint of judicial discretion and the standardization of sentences may lead to less disparity in sentences, *see United States v. Pinto*, 875 F.2d 143 (7th Cir.1989), it is also true that treating too many unlike defendants as if they are alike will violate rather than promote the principle of equality. *See* Albert W. Alschuler, *The Failure of Sentencing Guidelines: A Plea for Less Aggregation*, 58 U.Chi.L.Rev. 901, 916 (1991). I believe this to be a chronic problem with the mandatory minimum sentence provisions passed by Congress. As Aristotle once put it, in *Politics*, there is no greater injustice than to treat unequal things equally. It is this maxim that has led many federal judges to express disapproval of Congress' decision to deprive judges of the power to impose individualized sentences, and I note that the Federal Courts Study Committee of the Judicial Conference of the United States has recommended the repeal of statutes containing mandatory minimum sentences. *Report of the Federal Courts Study Committee*, April 2, 1990, 133–34.

In the case before me, what I have learned from the trial and the presentence reports convinces me that I am confronted with two defendants that have different propensities toward criminal behavior and dissimilar receptivities to rehabilitation. Nevertheless, the mandatory sentencing provisions passed by Congress direct the Court to disregard what it knows; the probation office can make the most careful investigation about the characteristics of the defendant and the Court can make the most careful findings of fact about the proper offense level and criminal history score under the sentencing guidelines, but these are irrelevant if the defendant is

convicted under section 924(c) or any other statute requiring a minimum sentence greater than the applicable guideline range. *See* Sentencing Guidelines, §§ 2K2.4(a) and 5G1.1(b). As pointed out by two circuit judges in the Eighth Circuit, "this is in direct conflict with one goal of the guidelines, which is to individualize punishment in light of *case-specific* offense characteristics." *United States v. Gordon*, 953 F.2d 1106, 1108 (8th Cir.1992) (Heaney, J., concurring).

Moreover, although this Court believes that the crimes committed here are serious ones requiring the incarceration of the defendants, the length of sentences without parole, as mandated by Congress, strip the defendants of any incentive to work toward the rehabilitation of their lives, or to reform their conduct. Without the possibility of a future outside the prison walls, there is no hope of a non-criminal life. Further, I believe that with at least one of the defendants in this case, any desired deterrent effect could be achieved with a sentence in the range of five to ten years. David Quigley, who sustained injuries by the accidental explosion of one of the devices, has already begun to pay the price for his actions with the result of blindness in one eye.

Finally, it does not go unnoticed by this Court that Congress twice increased the penalty under section 924(c) in recent years, and that it has done so in election years. Prior to being amended in 1984, section 924(c) provided for a consecutive sentence of from one to ten years for offenses involving firearms. In 1984, Congress amended the provision to provide for mandatory, determinate sentences (a minimum of 10 years if the firearm happened to be an explosive), and, in 1988, only four years later, Congress amended the provision again to increase the mandatory minimum sentence to 30 years. One has to wonder whether it is wisdom or political pandering that leads Congress to sentence the taxpayers to paying for the incarceration of a nineteen-year-old and a twenty-two-year-old for nearly the rest of their lives, rather than imposing a severe, yet less draconian, penalty that would allow them the hope of returning to society as reformed individuals. While I recognize that such hope must be combined with punishment to be effective, and while I acknowledge that hope contains no certainty, a hope denied completely is an opportunity extinguished forever. This is certain.

### ORDER

In accordance with the Opinion entered this date;

IT IS HEREBY ORDERED that defendant David Quigley's motion for judgment of acquittal, filed April 27, 1992, (dkt. # 30) is DENIED;

IT IS FURTHER ORDERED that defendant Michael Holdridge's motion for judgment of acquittal, filed April 27, 1992, (dkt. # 20) is DENIED.