985 F.2d 554
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Karim FARUQ, a/k/a Charles Williams, Defendant-Appellant.
 No. 92-5340.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 4, 1992
Decided: February 8, 1993
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frank A. Kaufman, Senior District Judge. (CR-91-217-K)
 Arcangelo M. Tuminelli, Baltimore, Maryland, for Appellant.
 E. Thomas Roberts, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 Richard D. Bennett, United States Attorney, Robert E. Sims, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before RUSSELL and WILKINSON, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Karim Faruq, a.k.a. Charles Williams, appeals from the refusal by the United States District Court for the District of Maryland to dismiss a multi-count indictment issued against Appellant, an indictment Appellant contends is barred by a written plea agreement in a prior case and the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Because we find no error in the lower court's denial of Appellant's motion to dismiss, we affirm.
 
 
 2
 The facts pertinent to this appeal are these. During late 1988 and early 1989 federal and local authorities commenced an investigation into the alleged drug trafficking activities of Appellant. As a result of this investigation, on February 15, 1990, law enforcement authorities executed search and seizure warrants with regard to properties associated with Appellant. The searches yielded drug paraphernalia, a firearm, and an amount in excess of $100,000 in cash.
 
 
 3
 On February 15, 1990, Appellant was charged in Maryland state court with the offenses of felon in possession of a handgun and drug paraphernalia. On April 11, 1990, Appellant was indicted in the United States District Court for the District of Maryland on the basis of 18 U.S.C. § 922(g)(1), felon in possession of a weapon. Subsequent to the issuance of the federal indictment, the state charges were dropped. On June 25, 1990, the United States proffered a written plea agreement to Appellant for his inspection. Appellant related to the United States that he did not favor the requirement that jewelry of his parents be forfeited; this requirement was subsequently deleted. The modified agreement was then executed, the terms being that Appellant plead guilty, which he did, to a felon in possession of a weapon charge, that Appellant forfeit property and currency amounting to nearly one-third of a million dollars, and refrain from contesting the forfeitures. In return, the United States agreed that Appellant would qualify for positive sentence consideration for acceptance of responsibility, that the United States would recommend a sentence at the lower end of the applicable guideline, and that Appellant would remain free on bond pending sentencing. On January 11, 1991, Judge Herbert F. Murray sentenced Appellant to term of imprisonment of fifteen months.
 
 
 4
 On October 9, 1991, while Appellant was incarcerated, a ninecount federal indictment issued charging Appellant with conspiracy to distribute and possess with intent to distribute heroin and cocaine (counts I and II); income tax evasion (counts IV, V and VI); money laundering (count VII); heroin distribution (count VIII); and engaging in a continuing criminal enterprise, based on the narcotics charges (count IX). A substantially similar second superseding indictment was returned on December 4, 1991.
 
 
 5
 On January 16, 1992, Appellant filed a motion to dismiss counts I, II, IV, V, VI, VII and IX of the indictment, alleging violations of the aforementioned plea agreement and the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.[1] Subsequent to extensive evidentiary hearings on the motion, Judge Frank A. Kaufman entered Orders on April 9, 1992, denying Appellant's motion as to each ground asserted.
 
 
 6
 Appellant makes two arguments in his appeal. First, Appellant contends that the lower court erred in denying his motion to dismiss counts I, II, IV, V, VI, VII, and IX, arguing that the plea agreement of June 25, 1990 contained a promise that the United States would not prosecute Appellant for the behaviors alleged in the aforementioned counts. Second, Appellant argues that the lower court erred in permitting the United States to prosecute him for those counts because the United States at the time of the first prosecution knew or could have discovered through due diligence the additional evidence to bring the counts at the time of the first prosecution. Therefore, Appellant argues, the Double Jeopardy Clause bars the United States from prosecuting Appellant in the second prosecution under the "due diligence" exception as enunciated by the Eleventh Circuit in United States v. Binker, 799 F.2d 695 (11th Cir. 1986), cert. denied, 479 U.S. 1089 (1987), and United States v. Boldin, 772 F.2d 719 (11th Cir. 1985), cert. denied, Scarborough v. United States, 475 U.S. 1098 (1986). We find no merit in either of these contentions.
 
 
 7
 The plea agreement entered into by Appellant and the United States on June 25, 1990, provides in pertinent part as follows:
 
 
 8
 (5) (b) It is further agreed that the States Attorney's Office will not reinstitute any charges arising from the search of February 15, 1990.
 
 
 9
 (8) This letter states the complete plea agreement in this case. There are no other agreements, promises, undertakings, or understandings between your client and this Office. Specifically, this agreement relates only to the charges arising from the search of February 15, 1990. It does not relate to any other investigation which law enforcement would undertake.
 
 
 10
 (Emphasis added.)
 
 
 11
 Appellant asserts that the United States made a clear and unambiguous promise not to prosecute him for any crimes"arising" from the searches on February 15, 1990, and that the charges in his present indictment arise from those searches. According to Appellant, he is entitled to specific performance of the promise because he relied to his detriment on that promise. Cooper v. United States, 594 F.2d 12 (4th Cir. 1979).
 
 
 12
 The United States argues that the lower court here found the agreement to be unambiguous and therefore Appellant should not be entitled to have a promise read into the agreement just because he believed the agreement contained such a promise. United States v. Sutton, 794 F.2d 1415, 1423 (9th Cir. 1986). Here, the United States contends, there was simply no promise about what, if any, charges would or would not be brought. Both prosecutors that signed the agreement testified that subsection (8) simply makes clear that there is no agreement about additional investigations and that the plea agreement relates only to the charges which had been brought against Appellant arising from the searches, i.e., the state charges of drug paraphernalia and firearm possession, and the federal charge of felon in possession of a weapon to which Appellant pled guilty. The United States asserts that in fact the specific purpose of this language was to make clear the caveat that promises about other investigations, which were ongoing, were not being made.
 
 
 13
 Additionally, the United States argues that the fact that the agreement contained in paragraph 5 an explicit promise by the States Attorney's Office not to reinstitute the charges which it had dismissed makes clear that, had the parties wished to include a future prosecution prohibition, they knew how to do so. The fact that the agreement did not contain an explicit promise by the United States not to lodge such additional charges means that no agreement was reached on that issue by the parties. According to the United States, all of the government's obligations and promises were recited in paragraph (5). The purpose of paragraph (8) was to make clear that no other promises relating to prosecution had been made except those relating to the charges already brought against Appellant. It is only the gun and paraphernalia charges that could "arise" from the February 15 searches. These were the only charges brought against Appellant as of the date of the plea agreement and it is only these charges that arose as a result of the searches.
 
 
 14
 The law in the area of plea agreement interpretation is long wellsettled. In such interpretations, "we must apply fundamental contract and agency principles to plea bargains as the best means to fair enforcement of the parties' agreed obligations." United States v. McIntosh, 612 F.2d 835, 837 (4th Cir. 1979). Therefore, "any dispute over the terms of the agreement is to be resolved by objective standards." United States v. Krasn, 614 F.2d 1229, 1233 (9th Cir. 1980).
 
 
 15
 In this regard, the threshold consideration is whether the agreement is ambiguous or susceptible of alternative interpretations. Here, the parties essentially agree that subsection (8) of the June 25, 1990, plea agreement is unambiguous. The question, therefore, is what meaning to lend to that patently unambiguous provision. In this respect, we are in complete agreement with the conclusions of Judge Kaufman, reached after hearing extensive testimony on the matter. Judge Kaufman found subsection (8) meant exactly what it said: that the agreement related only to the charges arising from the search of February 15, 1990. In proffering subsection (8), "the United States Government ... agreed not to prosecute in connection with charges other than the gun charge ... So if I look at the June 25, 1990 agreement I find no ambiguity and I find it means precisely what the Government claims that it states and means." The court also dismissed Appellant's contention that the agreement should be read expansively to incorporate the subsequent counts because a narrow reading would be implausible given the substantial sacrifices Appellant made in return for a guilty plea to a single gun charge. In fact, Judge Kaufman concluded, there were several reasons that possibly militated toward Appellant's acceptance of the plea agreement: it avoided a trial in a matter in which the government had an "open and shut case"; it avoided the real danger that Appellant's criminal history would oblige the Court to go outside the sentencing guidelines; it enabled Appellant to remain free on bond; Appellant's family did not suffer forfeiture; and, finally, the "intangible" consideration that Appellant may have thought that he could placate the government's possible desire for other investigations into his affairs if he were to plead guilty.
 
 
 16
 Given the thoroughness and apparent thoughtfulness of Judge Kaufman's findings of fact and conclusions of law, we cannot conclude as a matter of law that they were in error. In the recent case of United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986), we stated that if a plea agreement "is unambiguous as a matter of law, and there is no suggestion of government overreaching of any kind, the agreement should be interpreted and enforced accordingly." Similarly, "[w]hile the government must be held to the promises it made, it will not be bound to those it did not make. To do otherwise is to strip the bargaining itself of meaning and content." United States v. Fentress, 792 F.2d 461, 464-65 (4th Cir. 1986). We believe that the plea agreement entered into by Appellant and the United States is unambiguous on its face, was not the result of overreaching by the government, and therefore should be enforced by its strict terms.
 
 
 17
 Appellant next argues that the United States should be barred from prosecuting him on counts I, II, IV, V, VI, VII and IX because the prosecution is violative of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. According to Appellant, where the government has prosecuted an individual for conduct that resulted in a conviction, the government cannot prosecute that individual in a subsequent case based upon the same conduct or transactions, if the government could have or should have discovered through due diligence the additional conduct supporting the subsequent prosecution at the time of the initial prosecution. United States v. Boldin, 772 F.2d 719 (11th Cir. 1985), cert. denied, Scarborough v. United States, 475 U.S. 1098 (1986). Here, Appellant argues, each of the counts are based on evidence that was obtained from the February 15, 1990, search and the related investigation, evidence that could have been discovered through due diligence by the government in the earlier case. Therefore, Appellant argues, the United States cannot properly prosecute him on the basis of the subsequently filed counts.
 
 
 18
 The United States makes several arguments in response. First, the United States asserts that under Supreme Court precedent the unlawful weapon possession conviction in no way bars the subsequent counts involving narcotics, money laundering and tax evasion because the former is not the "same offence" as any of the latter. Second, the United States argues that even if this Court were to adopt the "due diligence" exception, which the United States urges us not to do, this appeal must fail. This is because the evidence prerequisite to the filing of the subsequent counts had not developed sufficiently to justify charges against Appellant as of the time of the earlier prosecution. The narcotics, money laundering and tax evasion cases against Appellant developed much later, as under cover buys were made and additional witnesses secured. The financial investigation was not completed until June 1991, well after Appellant's initial indictment for the firearm offense in April, 1990.
 
 
 19
 We find Appellant's basis for appeal to be unavailing in this regard as well. The Double Jeopardy Clause forbids that"any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. "This constitutional proscription serves primarily to preserve the finality of judgments in criminal prosecutions and to protect the defendant from prosecutorial overreaching." Garrett v. United States, 471 U.S. 773, 795 (1985) (O'Connor, J., concurring). The guarantee is said to consist of three separate constitutional protections designed to prevent the following: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969).
 
 
 20
 A moment's reflection, however, compels the conclusion that these protections are not implicated in this appeal. This is because the prior gun possession conviction cannot properly be considered the "same offense" as the charges contained in the subsequent multi-count indictment. Each offense requires proof of a fact which the others do not, thus satisfying the test announced in Blockburger v. United States, 284 U.S. 299, 304 (1932). Nor, for that matter, is the gun offense a greater or lesser included offense relative to any of the other charges. Brown v. Ohio, 432 U.S. 161, 169-70 (1977). The subsequent prosecution also passes muster under the Supreme Court's most recent pronouncement in this area. In Grady v. Corbin, 495 U.S. 508 (1990), the Court stated that "the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Id. at 510 (footnote omitted). In the instant case, the narcotics, money laundering, and tax evasion charges are independent and distinct crimes, each obviously involving different proof than the initial firearms conviction. Even if the proof adduced in the course of the subsequent trial to some extent derives from evidence produced by the February 15, 1990 search, the prosecution is not barred on double jeopardy grounds. See Garrett, 471 U.S. 773, 790 (expressly rejecting any "single transaction" view of the Double Jeopardy Clause). Finally, the continuing criminal enterprise (CCE) count itself would not be barred. The predicate offenses for the CCE count relate to narcotics offenses (counts I, II, and VIII), which obviously bear no relation to the prior conviction for unlawful possession of a weapon.
 
 
 21
 Appellant also invites the Court to address whether he can achieve redress under what has become known as the "due diligence" exception to the rule announced in Brown v. Ohio, 432 U.S. 161 (1977), that double jeopardy prohibits the government from trying a defendant for a greater offense after it has convicted him of a lesser included offense. In Jeffers v. United States, 432 U.S. 137 (1977), the Supreme Court arguably put its imprimatur on the due diligence exception to the Brown rule. In Jeffers, Justice Blackmun wrote that this exception applies "when the facts necessary to the greater [offense] were not discovered despite the exercise of due diligence before the first trial." Id. at 152.[2] Subsequent to Jeffers, the Eleventh Circuit on two instances has acknowledged the exception. See United States v. Binker, 799 F.2d 695 (11th Cir. 1986), cert. denied, 479 U.S. 1089 (1987); United States v. Boldin, 772 F.2d 719 (11th Cir. 1985), cert. denied, Scarborough v. United States, 475 U.S. 1098 (1986).[3]
 
 
 22
 As a threshold matter, we reserve judgment on whether the "due diligence" exception merits adoption in this Circuit. However, assuming arguendo that the exception were applicable, Appellant still would be unable to achieve redress. As discussed above, the initial conviction, which involved a gun offense, in no way can be considered a greater or lesser included offense relative to the charges contained in the subsequent indictment. In this sense, the "due diligence" exception, would not be at play.[4] Still yet, Judge Kaufman found, and the record amply supports his conclusion, that the United States did not fail to exercise due diligence in bringing the multi-count indictment after the gun charge. The government simply lacked the factual predicate to pursue the subsequent counts at the time of the initial firearm prosecution.
 
 
 23
 Thus, in view of the foregoing, the lower court's denial of Appellant's motion to dismiss the multi-count superseding indictment of December 4, 1991, is
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 Defendant was not charged in Count III of the indictment, which involved one of his co-defendants. Count VIII, involving alleged heroin distribution on September 27, 1990, is not the subject of this appeal
 
 
 [2]
 See also Garrett, 471 U.S. at 797, 105 S.Ct. at 2420 O'Connor, J., concurring) (adverting to dicta in Brown suggesting that a later prosecution would not be barred when "the later prosecution rests on facts that the government could not have discovered earlier through due diligence.")
 
 
 [3]
 In Boldin, decided in 1985, the Eleventh Circuit appeared to adopt the "due diligence" exception. According to the Boldin Court, the government subjected defendants to "multiple prosecutions because, in the exercise of due diligence, it knew or should have known of the[defendants'] participation in a continuing series of violations of section 848." Boldin, 772 F.2d at 732. This notwithstanding, the Court proceeded to conclude that defendants failed to show that the government did not exercise due diligence and therefore permitted the subsequent prosecution. In Binker, decided in 1986, another panel of the Eleventh Circuit exhibited marked reticence with regard to the exception, stating that it reserved judgment on whether the "theory would provide a ground of reversal...." Binker, 799 F.2d at 696. Nevertheless, like in Boldin, the panel determined that the government exercised due diligence and therefore the subsequent indictment was proper. Id. In the most recent treatment of the exception within the Eleventh Circuit, the United States District Court for the Middle District of Florida expressly adopted the Boldin exception, and granted Defendant's motion to dismiss the superseding indictment. See United States v. Maza, 764 F. Supp. 1451, 1454-55 (M.D. Fla. 1991)
 
 
 [4]
 Significantly, Jeffers, on which the Boldin Court relied, and Brown, the apparent modern origin of the due diligence exception, both concerned successive prosecutions for greater and lesser included offenses. See Jeffers, 432 U.S. at 152 (successive prosecutions for possession with intent to distribute heroin after prior conviction for simple possession of heroin); Brown, 432 U.S. at 169-70 (successive prosecutions for auto theft following prosecution for the lesser included offense of operating the same vehicle without the owner's consent). Moreover, in Boldin itself the subsequent charge, continuing criminal enterprise, involved narcotics offenses, and the prior prosecution of the Boldin defendants also involved narcotics offenses. Here, on the other hand, the prior charge against Appellant concerned possession of a weapon, and the CCE predicate offenses concern narcotics. In this sense, even if we were to adopt the due diligence exception, the instant facts present a far more tenuous context for redress than that presented in Boldin